SELDEN *vs.* VERMILYEA and others.

A general power in trust is where an authority is given to the grantee to do some act, in relation to lands, which the grantor might himself lawfully perform; and where he is authorized to alienate the lands in fee, by means of a conveyance to any alienee whatever ; and where some persons, other than the grantees of the power, are designated as entitled to the proceeds, or other benefits, to result from the alienation according to the power.

A power is irrevocable if no authority to revoke it is reserved or granted in the instrument creating it. And it is imperative if its execution is not made expressly to depend upon the will of the grantee, and if it imposes on the grantees a duty, the performance of which may be compelled in equity, for the benefit of the parties interested.

A court of equity will not interfere, by injunction, to prevent the execution of a power imposing a duty the performance of which it is the province of the court to enforce; *unless the power has been inequitably or unconscionably executed.*

A trust to sell lands, and divide the proceeds among the *cestuis que trust,* as beneficiary owners, and not as creditors, is void as a trust, but is valid as a power in trust.

Where a power to sell real estate is founded upon a valuable consideration, such as the surrender, by one or more of the owners, of a preference which they have obtained, and no power of revocation has been reserved, the power to sell is irrevocable, and imperative.

IN EQUITY. B. W. Rogers, being the owner of certain shares in the Apalachicola Land Company, of certain lands in Living-

ston county, and of an interest in the Seneca Reservation, in order to borrow money of the Farmers Loan and Trust Company, conveyed to that company the lands in Livingston county, and took back from them a declaration of trust, stating that they held the same as security for the loan, &c.

Rogers was also indebted to the plaintiff, and to the defendant Vermilyea, in the sum of $40,023,98 each; to secure which debts he executed sundry bonds and notes, and a conveyance to Noyes & Ogden, as trustees, of all the premises above mentioned, (the Livingston county lands subject to the lien of the Farmers Loan and Trust Company, and the Seneca Reservation subject to another trust,) in trust to receive conveyances, manage and improve, sell and dispose of the premises, in such parcels, at such times, and on such terms, as the said trustees should think beneficial, and to apply the moneys, &c. received by them, in payment of such of the bonds and notes of Rogers as should be due and remain unpaid—and whenever any of the notes and bonds should remain unpaid thirty days after falling due, then the trustees, upon the request of either Selden or Vermilyea, should sell in New-York after ten days' notice, so much of the Apalachicola Land Company shares as should be necessary to pay the bonds or notes in regard to which such request should be made. And if those shares should be inadequate to that end, then the trustees should, after six weeks' notice, sell in New-York, so much of the other trust premises as might be necessary to make up the deficiency; and when all the notes and bonds should be paid, then the remainder of the trust premises were to be reconveyed to Rogers.

By subsequent arrangements between all the parties, the lien of the Farmers Loan and Trust Company was extinguished, the residuary interest of Rogers was released to the trustees, and Rogers discharged from all personal liability on his bonds and notes; the trust fund being accepted as satisfaction of his indebtedness. By the agreement then made it was stipulated that for the purpose of avoiding a forced sale, arrangements should be made for the disposition of the whole trust property, and that the same should be offered for sale by the trustees

(unless an amicable division without sale should be sooner agreed upon,) without delay, upon a reasonable advertisement, and under such conditions as would conduce to bring about a sale to the greatest advantage.

At the time of filing the bill, Selden continued to be the owner of all his bonds and notes, but Vermilyea had assigned several of his, to some of the other defendants, three of whom had, prior to the last agreement, notified the trustees that their bonds being over due they must proceed to sell in order to raise the means of paying them. The trustees were proceeding to sell when this last agreement was made and that sale countermanded.

The trustees were again proceeding to sell, pursuant to this last agreement, when the plaintiff filed his bill, claiming that the trust was void and had expired, and that he was seised of the legal estate in his share, praying a partition with the other owners, and for an injunction to restrain the trustees from selling. The injunction having been granted, a motion was now made to dissolve it.

*E. Sandford & A. C. Bradley*, for the defendants.

*P. Y. Cutler*, for the plaintiff.

EDMONDS, J. The trust originally created by the conveyance from Rogers to Noyes & Ogden was undoubtedly valid under our statutes, for it was emphatically a trust to sell lands for the benefit of creditors. (1 *R. S.* 728, § 55.) But its whole character was changed by the susbequent arrangements among the parties. The debt for which the original trust was created was extinguished. Rogers was discharged from all personal liability, his notes and bonds were all delivered up, or cancelled, and his residuary interest was fully released. He ceased to have any connexion with, or interest in, the property. The trust property had been taken in satisfaction of his debts, and they who had been once interested only as creditors, entitled only to payment of their debts, with a remainder over to their

debtor, became thenceforth clothed with the beneficial interest, and with the whole of it; irrespective, (except as to partition among themselves,) of the amount of their original claims. So that but for the interposition of the trust, they became entitled to the actual possession, to the receipt of the rents and profits, and to the whole interest in the trust property. That is, under our statute, they had a legal estate therein, of the same quality and duration, and subject to the same conditions, as their beneficial interest. (1 *R. S.* 727, § 47.) It was a merely nominal or naked estate in trust converted into a legal estate in the persons having the beneficial interest therein. (*Matter of Dekay,* 4 *Paige,* 403.)

Besides, it may be questioned whether the trust was not determined in another sense. The trust was a lawful one, to sell lands for the benefit of creditors. The debts were all paid, the estate was taken in satisfaction, and there were no longer any creditors; so that under § 67 of the statute the estate of the trustees may be considered as having ceased. But it is not necessary to decide this. In the other aspect of the case, it cannot be regarded as a trust estate. What then is it? If it is an absolute legal estate in the *cestuis que trust,* then the plaintiff is right in seeking to restrain the trustees from selling, and has a right to the partition for which he prays.

But it is insisted that the right of Noyes & Ogden is valid as a power in trust; that even if the express trust created by the existing agreements was not for any of the purposes enumerated in the statute, and therefore no estate vested in the trustees, yet that the trust directed and authorized the performances of an act which may lawfully be performed under a power, and is therefore valid; (1 *R. S.* 729, § 58;) and that the land remains in the persons otherwise entitled, subject to the execution of the trust as a power. (*Id.* § 59. *Brown* v. *Wilbur,* 8 *Wend.* 661.)

This is the important question in the case, and though I can well see how the possession and exercise of the power of sale in the trustees, may operate to the injury of the plaintiff, and that it might be much better for him, and fairer to him, to allow him to take and manage at his own pleasure his own share of

Selden *v.* Vermilyea.

the trust property, yet, if under the agreements which he has made, he has granted away this power in such manner as, under the rules of law, to deprive him of the power to control it, however much it may be regretted, those rules of law cannot be made to bend to any such apparent equity.

This seems to me to be what our statute defines as a general power in trust. It is an authority to do some act in relation to lands which the owner granting the power might himself lawfully perform. (1 *R. S.* 732, § 74.) It authorizes the alienation in fee, by means of a conveyance to any alienee whatever. (*Id.* § 77.) And some persons, other than the grantees of the power, are designated as entitled to the proceeds or other benefits to result from the alienation according to the power. (*Id.* 734, § 94.)

The effect of the various agreements and contracts between these parties then, is this, that originally there was a valid trust estate in Noyes & Ogden to sell lands to pay the creditors of Rogers, but by the agreements of October, 1846, and February, 1847, the trust estate ceased, and Noyes & Ogden became seised of a general power in trust, to sell the same lands for the benefit of the different parties named therein.

The power is irrevocable, because no authority to revoke it is granted or reserved in the instrument creating the power. (1 *R. S.* 735, § 108.) It is imperative, for its execution has not been made expressly to depend on the will of the grantee, and it imposes on Noyes & Ogden a duty, the performance of which may be compelled in equity for the benefit of the parties interested. (*Id.* 734, § 96.) How then can the court interfere to prevent the execution of a power which imposes a duty, the performance of which, it is the province of the court to enforce? It might do so, if the execution of the power was inequitably or unconscionably performed. Such, it is averred, is this case; inasmuch as the plaintiff, who is the largest individual owner of any of the parties, may be compelled, for the protection of his own interest, to become at least the bidder, and perhaps the purchaser, of more than his share of the premises, and of more than he has any desire to own. This may well operate harshly

Selden *v.* Vermilyea.

on him, but if this is the legitimate operation of his own agreement made on a valid consideration, this court has no power to afford relief, when that relief can be furnished only by altering the agreement of the parties.

The bill, it is true, contains an averment that the plaintiff did not understand the agreement as importing an authority to sell at all events, and against his consent. But the answers controvert that allegation so distinctly, that it can be of no avail on this motion. His counsel, therefore, very properly omitted to press it, on the argument.

There is also no ground to impeach the consideration of the agreement. Under the original trust deed, the holders of the notes or bonds that first became due, might practically obtain a preference over the other creditors, at least in point of time of payment, if not in ultimate satisfaction. For such holders could require the trustees to pay the bonds or notes as they became due ; and the trustees, on such demand, were bound to sell so much of the trust estate as would make that payment. Three of those creditors who are now insisting on a sale were in that condition. They had obtained such a preference, and that preference they withdrew when the agreement in question was made. The relinquishment of that preference was alone a sufficient consideration for the agreement. The value of that consideration to the plaintiff is manifest from this fact, that at the time that agreement was made, though two of his bonds, amounting to $16,000, were due, yet those three defendants holding Vermilyea's bonds to the amount of $16,500, had, by the notice which they had given to the trustees, obtained such a preference over him. But that was not all that entered into that consideration. The removal of the lien of the Farmers' Loan and Trust Company, and of Rogers' residuary interest, were important elements, and doubtless had their weight with all parties. If then the execution of this power should operate harshly on the plaintiff, that will not afford adequate ground for the interference of this court against a valid agreement, founded on a good consideration.

The injunction must therefore be dissolved.