## HEERMANS v. ROBERTSON.

*Trust — what does not constitute — to receive rents and profits — to sell and convey real estate.*

F. by deed conveyed to plaintiff all his real and personal property, for these purposes: to sell the lands at the best prices; until the lands were sold to rent them; to collect debts due F., and from the avails received, after (1) defraying expenses and paying commissions, (2) during the life of F., to pay to him or his use the moneys received, and (3) after the death of F. to distribute, after paying the expenses and the debts of F., as might be directed in a supplementary writing, or if no such writing should be made, according to law. A subsequent deed directed the grantee to pay the debts of F. after his decease, and afterward to distribute the property conveyed among persons named.

*Held,* (1) that it was not the object of the grantee to create a distinct trust to receive the rents and apply them, and the authority for that purpose was at most a mere power; (2) that the deeds did not create a valid trust to sell lands under 1 R. S. 728, § 55, and (3) that the trust attempted to be created for the purpose of selling the lands was void, and no estate passed to plaintiff.

Where a trust is to receive the rents and profits during the life of a person, the doctrine is that the trust property must not be alienated during the life of the beneficiary, and a provision authorizing a sale of the whole estate without any provision for the preservation of the proceeds or their re-investment, is in conflict with the statute, and repugnant to all idea of a trust to receive the rents and profits, etc. 1 R. S. 728, § 55.

MOTION by plaintiff for a new trial after a nonsuit at the circuit, upon a case and exceptions ordered to be heard in the first instance at the general term.

The action was one of ejectment brought by John Heermans as trustee of Joseph Fellows, against Almon Robertson and Thomas

Creech, to recover the possession of certain premises claimed to belong to the estate of said Fellows.

At the trial plaintiff put in evidence an instrument under seal, dated October 10, 1868, and reading as follows :

"WHEREAS I, Joseph Fellows, of Corning, in the county of Steuben and State of New York, from infirmities and advanced age, deem it expedient to convey to my nephew, John Heermans, of Corning aforesaid, my real and personal estate in the States of New York, Pennsylvania, Michigan, Wisconsin, Indiana, Ohio, Illinois and West Virginia, as trustee, for the purposes herein stated: Now, therefore, I, the said Joseph Fellows, in consideration of the premises, and also of one dollar to me paid by the said John Heermans, the receipt of which is hereby acknowledged, have sold, and by these presents do grant, release and convey unto the said John Heermans, his heirs and assigns forever, all my real and personal estates situate in the several States aforesaid, to have and hold the same to the said John Heermans, his heirs and assigns forever; Provided always, that said John Heermans shall sell the said granted lands by retail for the best price that can be got for the same, and convey them in fee simple to purchasers, with covenants of warranty binding my heirs to warrant and defend the title to the lands so to be sold and conveyed; and until such lands shall be sold as aforesaid, he shall rent such of them as can be rented for the best price that can be got. He shall collect all debts owing to me, and execute deeds as aforesaid for all lands now under contract of sale, on payment of the debts owing on them respectively. The avails of the said real and personal estate shall be paid, distributed and disposed of as follows: First. To defray the expenses of this trust, to wit, five per cent commission on all moneys received and paid out, and all necessary and reasonable expenditures and charges in and about the execution of the trust, including local agencies. Secondly. During my life, the residue of all moneys received shall be paid over to me, or appropriated to my use under my directions. Thirdly. After my decease, and after the payment of all my just and legal debts and the expenses of the trust aforesaid, the residue shall be distributed as directed in a writing supplementary to this deed, to be executed by me hereafter; or in case such writing shall not be executed, then the residue shall be distributed to my heirs according to the laws of the State of New York. And I authorize and direct the said John Heermans in his

Heermans v. Robertson.

discretion to compromise any disputed claims, and also to make abatement in debts when the security is insufficient or doubtful."

The plaintiff also gave in evidence a supplementary instrument under seal from said Fellows to him, dated October 15, 1868, which, referring to the above-named deed and supplementary thereto, directed the said plaintiff after said Fellows' decease to distribute the estate left after payment of debts and expenses, among certain persons therein named, and pay certain annuities to other persons therein named, all payable from the day of his decease during their natural lives.

It was proved that the defendant Creech was in possession under the defendant Robertson as his tenant. It was also proved that Joseph Fellows died on the 29th day of April, 1873, and that this action was commenced June 16, 1873.

It appeared that the defendant Robertson was in possession of said premises under a contract of sale from Joseph Fellows dated December 16, 1870, and that he went into possession under said contract.

At the close of the case the defendants' counsel moved for a non-suit upon the ground that the plaintiff had shown no title to the premises, and that the right of the plaintiff under said deed terminated at the death of Mr. Fellows. The court granted the nonsuit and the plaintiff duly excepted.

*Brown & Hadden*, for plaintiff. Upon the question whether the instruments created a valid trust under the provisions of the statute of uses and trusts and vested in the plaintiff the legal title to the lands in question. *Leggett* v. *Perkins*, 2 N. Y. 505; *Gott* v. *Cook*, 7 Paige, 551; *Leggett* v. *Hunter*, 19 N. Y. 445; *Tobias* v. *Ketchum*, 32 id. 319; *Cruger* v. *Jones*, 18 Barb. 471; *Van Epps* v. *Van Epps*, 9 Paige, 237; *Wright* v. *Miller*, 8 N. Y. 8; Hill on Trustees, 130; *Matter Petition of Livingston*, 34 N. Y. 555; *Ram. Exchange Bank* v. *Eames*, 1 Ky. 588; *Matter of Fero*, 9 How. 85; Tiffany & Bullard's Law of Trusts, 42, 43, 209, 216, 500; *Belmont* v. *O'Brien*, 12 N. Y. 393; *Wright* v. *Douglas*, 7 id. 564; *Codding-ton* v. *Davis*, 1 id. 186; *N. Y. Dry Dock Co.* v. *Stillman*, 30 id. 174; *Coster* v. *Lorillard*, 14 Wend. 316; *French* v. *Carhart*, 1 N. Y. 96; *Wright* v. *Miller*, 8 id. 7; *Dubois* v. *Ray*, 35 id. 162; *Townsend* v. *Stearns*, 32 id. 309; *Downing* v. *Marshall*, 23 id. 366; 1 Hill on Real Prop. 209; *Hotchkiss* v. *Elting*, 36 Barb.

Heermans v. Robertson.

38 ; *Rawson* v. *Lampman,* 5 N. Y. 456 ; *Sterricker* v. *Dickinson,* 9 Barb. 516 ; *Yates* v. *Yates,* id. 324 ; *Depeyster* v. *Clendining,* 8 Paige, 295 ; *Leggett* v. *Perkins,* 2 N. Y. 297 ; *Noyes* v. *Blakeman,* id. 297 ; *Savage* v. *Burnham,* 17 id. 561 ; *White* v. *Howard,* 52 Barb. 294 ; *Clark* v. *Crego,* 47 id. 599 ; *Coster* v. *Lorillard,* 14 Wend. 265 ; *Marvin* v. *Smith,* 56 Barb. 600 ; *Gallie* v. *Eagle,* 65 id. 586 ; *Vernon* v. *Vernon,* 53 N. Y. 351 ; *Stagg* v. *Jackson,* 1 N. Y. 211 ; *Hawley* v. *James,* 16 Wend. 121 ; *McLean* v. *McDonald,* 2 Barb. 537 ; *Lang* v. *Ropke,* 5 Sandf. 371. As to whether the power of the plaintiff terminated with the death of Fellows. *Irving* v. *DeKay,* 9 Paige, 522; *Nicoll* v. *Walworth,* 4 Den. 389; *Welch* v. *Allen,* 21 Wend. 148; *Belmont* v. *O'Brien,* 12 N. Y. 404; *Rogers* v. *Tully,* 20 Barb. 641; *Hawley* v. *James,* 5 Paige, 461.

*George B. Bradley,* for defendants.

E. DARWIN SMITH, J. The questions presented upon the exceptions taken to the nonsuit at the circuit depend entirely upon the construction of the deeds from Mr. Fellows to the plaintiff.

It appears that the question of the construction of these deeds has been before this court in a former action instituted by Mr. Fellows in his life-time to set aside deeds, in the case of *Fellows* v. *Heermans,* reported in 4 Lans. 230.

That case was heard in the Third Department and was quite fully discussed in the opinions delivered by Judges HOGEBOOM and MILLER, and so far as that court clearly and distinctly decided any question involved in this action we should feel bound to regard such decision as *res adjudicata.* But the court was divided in opinion and we think did not clearly decide any question except that that action could not be maintained, and that the complaint was properly dismissed at special term.

The learned judge who gave the prevailing opinion seemed to be in doubt whether the said deeds created a valid trust, but, upon the whole, concluded that they did create a valid power in trust and the decision of the case, I think, should be considered as deciding nothing else in respect to the real estate. That ground was sufficient to warrant the decision dismissing the complaint.

This is an action of ejectment, and the plaintiff was nonsuited at the trial upon the ground that he showed no title in himself. Ejectment is a possessory action based upon a legal title, and the

plaintiff was bound to show that he had the legal right to and was entitled to the possession of the premises in dispute.

His title solely rested upon the deeds of the 10th and 15th of October, 1868. The counsel for the plaintiff, in his argument, claims that the said deeds did create a valid trust and did vest in him the legal title to the land in dispute and that he was, therefore, erroneously nonsuited at the circuit.

By the Revised Statutes uses and trusts were abolished (art. 2, tit. 2, chap. 1, part 2, § 45, 1 R. S. 727), except as authorized in said articles.

In section 55 (1 R. S. 729) it was declared that "express trusts may be created for any or either of the following purposes: 1. To sell lands for the benefit of creditors. 2. To sell, mortgage or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon. 3. To receive the rents and profits of lands and apply them to the use of any person during the life of such person or for a shorter time, subject to the rules prescribed in the first article of this title. 4. To receive the rents and profits of lands and to accumulate the same for the purposes and within the limits prescribed in the first article of this title."

It is not contended that within these specifications any valid trust was created by said deed, except under the third specification or subdivision. It is also urged by the counsel for the plaintiff that the provision in the deed of the 10th of October directing that the trustee shall sell the lands at retail, and until said lands shall be sold as aforesaid, he shall rent such of them as can be rented for the best prices that can be got, and by a further clause in the deed, that the avails of the real and personal estate shall be paid and distributed as follows: Secondly. "During my life-time the residue of all moneys shall be paid over to me and appropriated to my use under my direction," constitute a trust to receive the rents and profits of the land, and apply the same to the use of the grantor named in the deed during his life-time and thereafter *to the use of any person during the life of such person.*

But this view I think is hardly tenable. The provision to collect the rents is merely an incidental power. This was not the primary object of the contemplated trust. It was a mere casual and temporary provision in respect to the use of the property while the lands were awaiting sale. It was not the object or intent of the

grantor to create any distinct trust for that purpose. It was at most a mere power.

A provision authorizing a person to collect rents due a party and pay them over to him would be nothing more than a mere power of attorney, revocable at any time. It would create no trust in favor of the attorney to whom the power should be given. It would be like the ordinary power to an attorney to collect debts which would give the attorney no beneficial interest in the debts and would create no trust more than would be implied in all cases when one person has received the money of another by his authority.

Said subdivision 3 of said section 55 does authorize a trustee to receive the rents and profits of land and apply them to the use of any person during the life of such person. The case of *Matter of Livingston*, 34 N. Y. 556, presents an instance of such a trust. The deed in that case was made by William Winters, and conveyed the land "upon the trust to receive the rents and profits thereof, to the use of the said William Winters during the term of his natural life." This was the chief object of the trust. The deed contained no power to sell the lands, and the alienation of the same was necessarily suspended during the life of said Winters.

This was essential to the object and purpose of the trust. But such was not the object of Mr. Fellows in the execution of the deeds in question. His object was not to keep said property unsold and to preserve the same during his life, that he might derive his support and maintenance from the income thereof. He directed the property to be sold immediately, and was to receive the whole proceeds of the sales. The whole of such lands might have been sold in his life-time.

This would have defeated the object of the trust, if one had been created or designed merely to secure to himself the income of the property during his life.

When a trust is created for the express purpose of authorizing the trustee to receive the rents and profits of lands, and apply the same to the use of any person during the life of such person, the very object and intent of such trust implies that the lands shall be inalienable during the continuance of such life. *Lang* v. *Ropke*, 5 Sandf. 369; *Kane* v. *Gott*, 24 Wend. 662; *Boynton* v. *Hoyt*, 1 Den. 57; *Hawley* v. *James*, 16 Wend. 166.

The case of *Belmont* v. *O'Brien*, 12 N. Y. 396, illustrates the rule. In that case, Belmont, in contemplation of marriage, made

a settlement in favor of his contemplated wife by a deed to trustees, in which they were authorized and directed to receive the rents and profits of the estate, and apply the same to the sole and separate use of his intended wife, as if she were a *feme sole*, during her life. The trustees were authorized to sell any part of said lands, and invest the proceeds of such sale in other real estate, or upon bond and mortgage, or in public stocks. The question in the case was whether a sale by the trustees under said last-mentioned clause of the said deed would be valid. It was doubted, inasmuch as section 63 of the statute forbids the assignment or disposition of the interest of a person beneficially interested in a trust for the receipt of the rents and profits of land; and by section 65, every sale, conveyance, or other act of the trustee in contravention of the trust, is declared absolutely void when the trust is declared in the instrument creating the trust; whether a sale of the trust estate, or any part of it, could be lawfully made.

But using the language of the chancellor in *Hawley* v. *James*, 5 Paige, 444, where he held that the mere exchange of one piece of property for another, by a trustee under a valid power in trust, is not considered as an alienation of the estate or interest of the *cestui que trust* or person beneficially interested in the trust estate, it was held that such a sale for the purpose of exchange or re-investment of the proceeds in other property, under the power given in the deed of trust, would not conflict with the statute, and could not be regarded as an alienation of the trust estate. A sale in such a case expressly authorized in the deed of trust was regarded as an act in furtherance, and not in contravention, of the object of the trust. It was a sale to preserve or improve the estate, or increase the fund or keep it from diminution or loss. Such a sale would be clearly admissible and would not be an alienation of the estate, in conflict with the statute or the intent and spirit of the trust. But a provision in a deed authorizing and directing a sale of the whole estate, absolutely without any provision for the preservation of the proceeds or their re-investment, or their perpetuity in any shape, would be in clear conflict with the statute, and repugnant to all idea of a trust in such lands to receive the rents and profits, etc.

The provision in the deed in this case directed the sale of the whole estate, and made no provision for the re-investment of the proceeds in other lands, or for their preservation in any way what-

ever that looked to the maintenance of them as a trust estate or the proceeds of trust property, or the continuance of the trust for the life of the beneficiary of the trust.

The object of the legislature in allowing express trusts to be created to receive the rents and profits of lands, and apply them to the use of some beneficiary, as was well said by Senator YOUNG in *Coster* v. *Lorrillard,* 14 Wend. 268, was " to enable provisions to be made for individuals destitute of the will, discretion or power to manage property for themselves." In such a case a trust term is necessarily created for the life of the beneficiary or for some shorter period. This involves a suspension of the power of alienation during such term in the very nature and character of the trust and to effectuate its object. In such a case the whole scope of the trust has respect to the rents and profits which can only arise from the continued use and occupation of the land. The grant in such case would speak of leases, terms and tenants, and not of sales or deeds or the avails of sales.

The lands described or referred to in these trust deeds were scattered over the States of New York, Pennsylvania, Michigan, Wisconsin, Indiana, Ohio, Illinois, and West Virginia, and were doubtless mostly wild lands and utterly unproductive, although I do not see as there is any particular proof on the subject in the case.

The doctrine of the cases in respect to the inalienability of the estate so held in trust has respect to the preservation of the trust estate or property during the continuance of the term or period for which the trust was created. When the trust is to receive the rents and profits during the life of a person the doctrine means that the trust property must not be alienated during the life of the beneficiary, so that he may have and enjoy, without risk or contingency, the fruit of the trust.

If it had been the purpose of Mr. Fellows to create a trust estate, to provide for his support during his life, it would be repugnant to such object to allow the whole estate to be sold during his life.

It is doubtless true that a grant or devise to receive the rents and profits of an estate may contain a provision for the termination of the trust or the expiration of the trust term.

Such was the case of *Marvin* v. *Smith,* 56 Barb. 600. In that case one Smith granted certain lands to one Bennet upon a trust to receive the rents and profits and appropriate them to the sole and

separate use and benefit of said Smith's wife during her life, with remainder to his heirs. The deed also contained a provision that said trustee whenever the wife of said grantor should desire a sale or mortgage of said land, or any part thereof, then the said trustee should sell or mortgage according to her directions and pay over the proceeds to her, or re-invest them according to her directions. The primary object of this deed was to create a trust to receive the rents and profits of the land and apply the same to the use of Mrs. Smith during her life, and a trust term for her life was created for that purpose, but the provision allowing a sale or mortgage coupled with it a clear special power in trust, making it the duty of the trustee to sell upon the directions of the appointee of the power, and thus close the trust. *Hotchkiss* v. *Elting*, 36 Barb. 46.

An express trust to sell land is valid as a power under the express provisions of the 58th section of the statute providing that "where an express trust shall be created for any purpose not enumerated in the preceding sections no estate shall vest in the trustees, but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust."

The deeds set out in the case did not create a valid trust to sell lands under the first subdivision of section 55 for the benefit of creditors. They contained no provision in respect to creditors or debts except in the provision in the supplementary deed directing distribution of the remainder of his estate after his decease, after the payment of his debts.

It seems to me quite clear, therefore, that no estate was created or vested under the clause of the statute referred to, "to receive the rents and profits, etc., and pay them to the grantor during his life." The provision in the deed is "to sell the land." This was the primary main object and intent of the trust specified in the deed, and for such purpose no valid trust could or can be created under the statute.

The trust attempted to be created in this deed for that purpose is, therefore, clearly void, and no estate passed by the deed to the plaintiff.

I concur entirely with the views expressed by Judge MILLER in *Fellows* v. *Heermans*, 4 Lans. 254, on this point — that "whenever the principal object of the trust is to sell lands and pay over the

avails, the authority to rent them in the meantime cannot take the case out of the statute."

The plaintiff at the trial showed no legal title to the lands in dispute, and was, therefore, necessarily and properly nonsuited.

The motion for a new trial should, therefore, be denied.

*New trial denied.*